UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JENNIFER M. VAN SANT,

      Plaintiff,

v.                                                              Case No. 8:22-cv-684-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.
_____/


**O R D E R**

      The Plaintiff seeks judicial review of the Commissioner's decision denying her

application for Disability Insurance Benefits (DIB).  For the reasons discussed below,

the Commissioner's decision is affirmed.

I.

      The Plaintiff was born in 1976, has at least a high school education, and has

past relevant work experience as a medical assistant, data entry clerk, public relations

representative/marketing director, and sales representative for dental and medical

equipment.  (R. 22–23, 139).  In November 2016, the Plaintiff applied for DIB, alleging

disability as of December 2015 due to sciatica, spondylosis, sacroiliitis, spinal stenosis,

brachial neuritis, lumbosacral neuritis, lumbar radiculopathy, post laminectomy

syndrome, and lumbar disc herniations from L1 through S1.[1]  (R. 139–40).  The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 149, 163).

An Administrative Law Judge (ALJ) conducted a hearing on the matter in July 2019.  (R. 76–104).  The Plaintiff was represented by counsel at that proceeding and testified on her own behalf.  (R. 76, 81–98).  A vocational expert (VE) also testified. (R. 96, 98–103).

In October 2019, the ALJ issued a decision that the Plaintiff was not disabled. (R. 169–89).  Upon review, the Appeals Council reversed that decision and remanded the case back to the ALJ.  (R. 190–94).

On remand, the ALJ held another hearing, at which the Plaintiff was again represented by counsel and again testified on her own behalf.  (R. 32–67).  A VE likewise testified.  (R. 63–67).

In a decision handed down in May 2021, the ALJ found that the Plaintiff (1) had not engaged in any substantial gainful activity from her alleged onset date in December 2015 through her date last insured in December 2018; (2) had the severe impairments of lumbar spine herniated discs without stenosis, as well as cervical spine

---

[1] Broadly speaking, the human spine consists of four parts: the cervical spine (i.e., the neck); the thoracic spine (i.e., the upper and/or middle back); the lumbar spine (i.e., the lower back); and the sacral spine (i.e., the lowest part of the spine, which is just above the coccyx).  *See generally* HOUSTON D. SMITH, GEORGIA SOFT TISSUE INJURIES § 3-8 (Supp. Apr. 2021). The location of the vertebrae in the cervical, thoracic, lumbar, and sacral spine are referred to as C1, 2, 3, etc.; T1, 2, 3, etc.; L1, L2, L3, etc.; and S1, 2, 3, etc., respectively.  *See* 4 ROSCOE N. GRAY & LOUISE J. GORDY, ATTORNEY'S TEXTBOOK OF MEDICINE § 13A.02 (3d ed. 2021).

disc bulges, status post anterior cervical discectomy and fusion; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform sedentary work with certain physical and environmental limitations; and (5) based on the VE's testimony, could engage in her past relevant work as a data entry clerk and public relations representative/marketing director, as well as other occupations that exist in significant numbers in the national economy.  (R. 7–24).  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 24).

The Appeals Council denied the Plaintiff's request for review.  (R. 1–6).  Accordingly, the ALJ's decision became the final decision of the Commissioner.  *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[3]  A physical or mental impairment under the Act "results from

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits.  *Id*.; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v.*

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing.  42 U.S.C. § 405(g).  Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).   In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations.  *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions.  *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

III.

The Plaintiff raises three challenges on appeal, all of which relate to the ALJ's step four analysis: (1) the ALJ erred in addressing the Plaintiff's cervical spine impairment; (2) the ALJ erred in considering the opinion of the Plaintiff's treating

5

physician regarding her physical limitations; and (3) the ALJ erred in evaluating the Plaintiff's subjective complaints of pain and other symptoms. (Doc. 20). After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenges lack merit.

## A.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must decide what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's medically determinable impairments and related symptoms. *Id.* § 404.1545(a)(1). As also noted above, an ALJ may ultimately find a claimant to be disabled only if the medically determinable impairments that preclude the claimant from engaging in substantial gainful activity have "lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

With these principles in mind, the Court turns to the Plaintiff's first claim of error regarding the ALJ's assessment of her cervical spine impairment. As best the Court can discern, the crux of this challenge appears to be that the ALJ improperly concentrated on the portion of the Plaintiff's claimed disability period which followed her seemingly successful cervical spine surgery in March 2018 and did not sufficiently consider the portion of her claimed disability period before then (i.e., between the Plaintiff's alleged onset date in December 2015 and her March 2018 cervical spine surgery). (Doc. 20). This claim fails.

6

In his decision, the ALJ noted early on in his step four analysis that he "considered all of the evidence" of record, even if it fell outside of the claimed disability period. (R. 16). Consistent with this pronouncement, the ALJ proceeded to engage in a detailed review of the medical information before him, beginning with three spinal procedures performed on the Plaintiff between 1992 and 2002. *Id.* The ALJ observed that notwithstanding these operations, the Plaintiff continued working for years afterwards and only ceased being employed in May 2015 when she was laid off. (R. 17). Relatedly, the ALJ also observed that the Plaintiff did not start complaining about pain pertaining to her spine—namely, in her lower back—until 2016, which was roughly fourteen years after her last back surgery. (R. 16). In addition, the ALJ noted that although an MRI of the Plaintiff's spine conducted in late 2016 revealed a disc herniation at L5–S1 without stenosis, it did not reflect any "other significant findings." *Id.*

The ALJ then went on to describe the treatment the Plaintiff received from the Florida Spine Institute in 2016, which included radiofrequency ablation, medial branch blocks, steroid injections, and narcotic pain medications, none of which—the ALJ acknowledged—"provided any . . . pain relief." *Id.* The ALJ remarked that on examination during this period, however, the Plaintiff remained neurologically intact and consistently exhibited "a normal gait," with "no joint pain or swelling and full 5/5 strength in all extremities." *Id.* The ALJ further commented that in connection with psychological evaluations of the Plaintiff performed between June 2017 and July 2018, the Plaintiff displayed "a normal gait," did not utilize an "assistive device," and "even

7

admitted during [her] first examination that she rated her pain at only a level of 3 out of 10." *Id.*

With respect to the Plaintiff's claims of neck pain in particular, the ALJ noted that an MRI of the Plaintiff's cervical spine in December 2017 revealed "multilevel disc bulges, as well as a C4-5 disc herniation with stenosis and an abnormality at C6-7," which led to the aforementioned cervical spine surgery in March 2018. *Id.* The ALJ further noted, however, that in the same month as this MRI, the Plaintiff established care with a new primary care physician, who examined the Plaintiff and found that she "had no gross sensory or motor deficits." (R. 17).

The ALJ additionally remarked that, in January 2018, the same physician found the Plaintiff to "have no tenderness of the back, no edema of the extremities[,] and no difficulty with ambulation." *Id.* The ALJ commented as well that the Plaintiff advised during a vocational consultation the same month that "while she had to stop riding horses, gardening[,] and working out, she continued to be able to bathe, groom[,] dress herself, cook and clean, shop in stores[,] and drive a car, albeit with difficulty due to alleged weakness and pain, as well as [a] fear of falling." *Id.* The ALJ further observed that the Plaintiff offered she had been "actively looking" for employment "since being laid off in May of 2015," which the ALJ construed as suggesting "that even the [Plaintiff] did not believe that she was totally unable to work in any capacity." *Id.*

And in the time frame just prior to the Plaintiff's cervical spine surgery in March 2018, the ALJ noted that although the Plaintiff reported to her primary care doctor she was experiencing neck pain, she essentially denied suffering from any other symptoms

8

("such as weakness, paresthesia, or gait disturbance"), exhibited "intact sensory and motor function," and "ambulated without difficulty on examination." *Id*. Lastly, the ALJ observed that following her March 2018 cervical spine surgery, the Plaintiff "admitted . . . her upper extremity pain and tingling [had] resolved" and that she did not otherwise complain or receive "treatment for neck pain after that time." (R. 16).

Against this backdrop, the Plaintiff's contention that the ALJ improperly considered her cervical spine impairment "only as to its effects after the [March 2018] surgery" cannot succeed. (Doc. 20). As the above recitation demonstrates, the ALJ engaged in a robust analysis of the Plaintiff's medical records dating as far back as 1992, with an emphasis on the evidence relating to the period immediately after the Plaintiff's alleged onset date in December 2015 and continuing through her cervical spine operation in 2018. *See generally* (R. 16–17).

Perhaps recognizing this deficiency, the Plaintiff intimates that there might have been more evidence regarding the disabling nature of her cervical spine condition during the claimed disability period if it had not been for the fact that her worker's compensation insurance carrier declined to approve her "cervical work-up" at the time. (Doc. 20). By way of example, she explains that the reason the MRI of her cervical spine was not performed until December 2017 was because she did not have insurance coverage for such imaging until then. *Id*.

The problem with this argument is that, as the government points out (Doc. 23), the Plaintiff received treatment with the Florida Spine Institute earlier during the claimed disability period and well before her March 2018 cervical spine surgery.

9

Moreover, as the ALJ concluded, the examination findings from this prior time frame did not reveal the Plaintiff's condition to be disabling. Notably, the Plaintiff does not meaningfully identify any record evidence from the claimed disability period that would necessitate additional limitations beyond those included in the ALJ's RFC determination. *Washington*, 906 F.3d 1359 (stating that "the overall burden of demonstrating the existence of a disability . . . rests with the claimant") (quoting *Doughty*, 245 F.3d 1274 at 1280). In fact, the only evidence the Plaintiff does cite seems to be that covered by the ALJ in his decision. *Compare* (Doc. 20 at 4–5) *with* (R. 16–17). And, to the extent the Plaintiff urges the Court to re-weigh the evidence relative to her cervical spine impairment, the Court is prohibited from doing so on appeal. *Viverette*, 13 F.4th at 1314 (affirming that a reviewing court may not decide the facts anew or re-weigh the evidence); *Carter*, 726 F. App'x at 739 (same) (citation omitted).

## B.

The Plaintiff's next challenge is that the ALJ erred in evaluating the opinion of her treating pain management physician, Dr. Nabil Gerges, who worked at the Florida Spine Institute. This challenge is also unavailing.

In arriving at an RFC determination at step four, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam)

(citing 20 C.F.R. § 404.1527(b)).[5]  Medical opinions are statements from physicians, psychologists, or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)).  In rendering this determination, an ALJ must take into account: (1) whether the healthcare provider at issue has examined the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant; (3) the medical evidence and explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization.  20 C.F.R. § 404.1527(c).  While an ALJ is required to assess all of these factors, he need not explicitly address each of them in his decision.  *Lawton*, 431 F. App'x at 833.

---

[5] Although this Regulation has been amended effective March 27, 2017, the new Regulations only apply to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c.  Because the Plaintiff submitted her application in November 2016, the older version of the Regulation is controlling here.

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2)).   Treating doctors' opinions are accorded the most deference because there is a greater likelihood that these providers will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)).   As a result, the ALJ must give a treating doctor's opinion substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam).   "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259 (citations omitted).   If an ALJ elects to "disregard a treating physician's opinion, . . . he must clearly articulate [his] reasons for doing so," *Hargress*, 883 F.3d at 1305 (internal quotation marks and citation omitted), and those reasons must be buttressed by substantial evidence, *Phillips*, 357 F.3d at 1241.   In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

12

In this case, Dr. Gerges provided the Plaintiff with pain management services between October 2012 and at least February 2021. (R. 18, 436–37, 3286).[6] Over the course of this time frame, Dr. Gerges reported in his treatment notes that the Plaintiff's infirmities included paresthesia, sacroiliitis, flat back, muscle spasms, spinal enthesopathy, chronic low back pain, and lumbar post laminectomy syndrome. (Doc. 20 at 7) (collecting record cites). Dr. Gerges also completed a Medical Source Orthopedic Questionnaire in July 2017, in which he specified several of the Plaintiff's diagnoses, including spinal enthesopathy. (R. 1594–95).

In his decision, the ALJ reviewed the information supplied by Dr. Gerges in the medical source questionnaire and largely discounted it on the grounds that it was "not particularly helpful in arriving at a physical [RFC]" for the Plaintiff. (R. 18). The ALJ reasoned:

> [The questionnaire] is merely a two-page fill in-the-blank check-the-box form that lists the [Plaintiff's] diagnoses and symptoms, before noting that she had reduced (4/5) grip strength and did not need an assistive device. While the undersigned agrees with these diagnoses, many of the symptoms are not consistent with the medical record. For instance, while this form indicates [the Plaintiff exhibited] gait disturbances, radiculopathy[,] and a reduced range of motion, as noted above[,] the records from [the] Florida Spine Institute routinely arrived at the opposite findings after objective examinations and testing of the [Plaintiff]. Moreover, this form is internally inconsistent as the [Plaintiff] is noted to have reduced grip strength, but no limitations in fine or gross dexterity on a regular basis. This assessment offers no opinions regarding the

---

[6] There is no dispute that Dr. Gerges is a treating physician. The ALJ described him as such in his decision (R. 18), the Plaintiff cites the treating physician rule in the portion of her memorandum pertaining to Dr. Gerges (Doc. 20), and the Commissioner does not contest this characterization of Dr. Gerges in her responsive submission (Doc. 23).

[Plaintiff's] ability to sit, stand, walk, lift, carry, bend, climb stairs[,] etc. Collectively, this evidence suggests that the assessment is both inconsistent with the medical record and minimally helpful. Thus, the undersigned affords it little weight.

*Id.*

The Plaintiff now claims that the ALJ erred by not addressing all of Dr. Gerges's "diagnostic opinions" in making his RFC determination, asserting that these "opinions" showed the Plaintiff's condition to be more severe than the ALJ deemed it to be. (Doc. 20 at 6–9). This claim does not survive scrutiny.

At the outset, it is worth noting the ALJ discussed in his decision at least some of the conditions that the Plaintiff now contends the ALJ ignored. By way of example, the ALJ acknowledged the Plaintiff's complaints of muscle spasms in his review of the medical records from the Florida Spine Institute (R. 16) and he also expressly agreed with Dr. Gerges about the Plaintiff's diagnosis of spinal enthesopathy (R. 18).

Beyond this threshold issue, the Plaintiff's challenge suffers from a more fundamental flaw. It is well settled that a diagnosis alone is not enough to prove a claimant's impairment is disabling. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (per curiam) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient" to prove a disability.) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). This is because a diagnosis does not, by itself, demonstrate "the effect of the impairment on [a claimant's] ability to work." *Id.* (citing *McCruter*, 791 F.2d at 1547).

14

And contrary to the Plaintiff's suggestion, the mere fact that a diagnosis is reflected somewhere in a physician's medical records does not transform it into a medical opinion. *See Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (per curiam) (declining to treat the results of a claimant's physical examinations and testing, and a provider's treatment recommendations as equivalent to a medical opinion); *Patino v. Comm'r of Soc. Sec.*, 2021 WL 8972946, at *3 (M.D. Fla. Oct. 7, 2021) (noting that an ALJ need not treat as a medical opinion every "physical examination finding, impression, diagnosis, or treatment plan referred to in the records"). Because the Plaintiff simply lists a number of diagnoses in her memorandum without adequately identifying the record evidence which demonstrates how the underlying ailments impacted her ability to work, her efforts to equate Dr. Gerges's "diagnostic opinions" with a medical opinion fails.

Finally, to the extent the Plaintiff invites the Court to find that the maladies she delineates in her submission caused her "greater pain" than the ALJ determined, she again misapprehends the Court's limited role on appeal. As noted above, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citation omitted).

## C.

The Plaintiff's remaining challenge is that the ALJ erred in considering some of her reported symptoms. This challenge likewise fails.

The assessment of a claimant's subjective complaints is governed by the Eleventh Circuit's "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.

2005) (per curiam).  Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain."  *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to decide how they restrict her capacity to work.  20 C.F.R. § 404.1529(c)(3).  The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for the relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms.  *Id.*

After weighing "a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed [on appeal] for substantial evidence."  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (per curiam)).  The ALJ, however, "need not cite particular phrases or formulations" in performing this assessment, so

16

long as the reviewing court can be satisfied that the ALJ satisfied his duty to consider a claimant's "medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (stating that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's testimony about pain, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence.  *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, the Plaintiff claimed she suffered from chronic pain in her back and neck, which she asserted radiated to her extremities.  (R. 15).  In addition, the Plaintiff alleged that this pain prevented her from engaging in any work and also precluded her from participating in almost all activities of daily living, including some basic forms of personal hygiene.  *Id.*

The ALJ referenced these subjective complaints in his decision, along with the Eleventh Circuit's pain standard and his obligation to account for all the Plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Id.* (citing 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017)).  The ALJ also rendered the following express credibility determination relative to the Plaintiff's subjective complaints:

17

> [T]he [Plaintiff's] medically determinable impairments could reasonably
> be expected to have caused some of the alleged symptoms; however, the
> [Plaintiff's] statements concerning the intensity, persistence[,] and
> limiting effects of [her] symptoms [were] not entirely consistent with the
> medical evidence and other evidence in the record for the reasons
> explained in this decision.

(R. 16).  In support of this assessment, the ALJ engaged in an extensive summary of the objective information and findings in the record which pertained to the Plaintiff's physical and mental health, including—of relevance here—evidence that she was alert and oriented, that she displayed normal and sustained concentration, and that her treatment had been conservative and routine.  (R. 16–22).

The Plaintiff largely does not contest the ALJ's determination regarding her subjective complaints, arguing only that the ALJ erred by not taking into account the impact of her pain medications.   (Doc. 20 at 9–11).  To bolster this contention, the Plaintiff points to her hearing testimony that her medications made her feel lethargic and to Dr. Gerges's deposition testimony in a prior proceeding that her medications would adversely affect her capacity to concentrate for eight hours and to perform work. *Id.*

There are a number of deficiencies with the Plaintiff's argument.  To start, the Plaintiff does not show that she mentioned medication side effects to any of her providers, much less establish that her providers viewed such side effects as causing the Plaintiff any work-related limitations.  The Plaintiff also did not cite medication side effects as a basis for her disability claim when she brought it.  The lack of such evidence in the record alone significantly undermines the Plaintiff's challenge.  *See*

18

*Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (per curiam) ("[W]hile [the claimant] testified to medication side effects and reported medication side effects once, [the claimant] also repeatedly declined to report any medication side effects.  Therefore, the ALJ did not fail to consider [the claimant]'s medication side effects . . . ."); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) (affirming the ALJ's determination that medication side effects "did not present a significant problem" where the claimant did not complain about such side effects to the doctors who examined her).

Moreover, although the ALJ did not specifically discuss the Plaintiff's alleged side effects in his decision, the ALJ did attest—as noted above—that he gave "consideration [to] the entire record," including "all [of the Plaintiff's] symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence."  (R. 12, 15) (citing 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304).  Given this attestation, the paucity of evidence buttressing the Plaintiff's claim of disabling medication side effects, and the entirety of the ALJ's decision, the Court is satisfied that the ALJ took into account the full ambit of the Plaintiff's medical condition in assessing her reported symptoms, including any medication side effects.  *See Robinson*, 649 F. App'x at 802 (finding that an ALJ met her duty to consider any medication side effects where she set forth in her decision that she evaluated all the claimant's symptoms as required by the applicable agency Regulations and rulings); *Morrison v. Kijakazi*, 2022 WL 970201, at *7 (M.D. Fla. Mar. 31, 2022) (determining that an ALJ properly assessed the claimant's

symptoms where the ALJ stated she examined all of the claimant's symptoms and the extent to which those symptoms could reasonably be accepted to be consistent with the objective medical evidence and other portions of the record) (citation omitted).

The Plaintiff's reliance on Dr. Gerges's deposition testimony is similarly without merit. The ALJ's representation that he considered the full record necessarily means he considered Dr. Gerges's testimony as well, along with all the contrary evidence.[7] Notably, the Plaintiff does not identify anything before the Court that demonstrates the ALJ did not do so.

Nor is the Court persuaded by the Plaintiff's efforts to highlight items in the record which she believes substantiated her reported symptoms. As the Eleventh Circuit has explained, "[u]nder a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). The Plaintiff does not do so here.

In sum, the ALJ made a clearly articulated credibility finding regarding the Plaintiff's subjective complaints, and that credibility finding is buttressed by substantial evidence. *Foote*, 67 F.3d at 1562 (citation omitted).

---

[7] This includes examinations where the Plaintiff exhibited normal and sustained concentration, as well as Dr. Gerges's own repeated notations in his treatment records that the Plaintiff was alert. (R. 15–22).

IV.

Based upon the foregoing, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk of Court is directed to enter Judgment in the Commissioner's

favor and to close the case.

SO ORDERED in Tampa, Florida, this 31st day of March 2023.


HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

21